IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EMPIRE INDEMNITY INSURANCE | § | |
| COMPANY, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:06-CV-1415-O |
| | § | |
| ALLSTATE COUNTY MUTUAL | § | |
| INSURANCE COMPANY, | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Empire Indemnity Insurance Company's Motion for Summary Judgment and Brief in Support (Doc. #17) filed October 19, 2007; Allstate County Mutual Insurance Company's Cross-Motion for Summary Judgment on Plaintiff's Claim for Declaratory Relief (Doc. #18) filed November 2, 2007; and Allstate's Partial Motion for Summary Judgment on the Amount Potentially Recoverable by Plaintiff (Doc. #29) filed January 4, 2008. The parties also filed responses, replies, and sur-replies to the applicable motions. Having review the pleadings, evidence, and the applicable law, the Court finds that Plaintiff's motion should be and is hereby DENIED. The Court further finds that Defendant's motion for summary judgment should be and is hereby GRANTED.

**I. BACKGROUND**

This action involves a dispute between insurers. Plaintiff Empire Indemnity Insurance Company ("Empire") initiated this action by filing an original complaint against Allstate County Mutual Insurance Company ("Allstate") seeking declaratory relief. *See* Doc. No. 1 (3:06-CV-1415-O) (N.D. Tex. Aug. 8, 2006). The crux of the dispute requires the Court to determine which insurer

had the duty to defend and indemnify Lewis Breeden[1], a repossession company employee, who while street racing a repossessed car, caused an accident resulting in severe injuries to Bruce and Debra Babcock. Empire also contends that Allstate had a duty to indemnify Innovative Assets Solutions, Inc. ("Innovative"), the repossession company.

a.    **The insurance policies**

Empire issued a commercial liability insurance policy to Innovative for the period from July 26, 2002 to July 26, 2003 under policy number CL305198.[2] (Pltff's App. at Ex. C). This policy provides liability coverage to an "insured" that must pay "damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from 'garage operations' involving the ownership, maintenance or use of covered 'autos.'" (*Id.* at p. 7). As applicable, a "covered auto" under the Empire policy is defined as "any auto you do not own, lease, hire, rent or borrow used in connection with your garage business described in the declarations." (*Id.* at 2, 6). The policy also provides an "Other Insurance" provision that states, in part, "for any covered "auto" you don't own, the insurance provided by this coverage form is excess over any other collectible insurance." (Pltff's App. at Ex. C, p. 18).

Allstate issued an automobile policy (number 3 29 418164 10/12) to Edward Espinoza that provided coverage for the vehicle involved in the accident, *i.e.*, a 2001 Mitsubishi Eclipse. (Pltff's App. at Ex. A). The liability provisions in the Allstate policy provide coverage for "damages for

---

[1] The underlying petition spells Breeden's first name as "Luis" while the deposition excerpts that the parties have attached as summary judgment evidence spell his first name as "Lewis." The Court assumes that despite the different spellings, the individual named as Luis Breeden in the underlying petition is one in the same as the individual identified as Lewis Breeden in the deposition excerpts.

[2] Although the policy was cancelled effective December 26, 2002, Empire concedes it was in effect during the time period relevant to the claims in this matter.

bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident." (Pltff's App. at Ex. A, p. 14). A "covered person" is specifically defined, in pertinent part, as "any person using [the] covered auto." (*Id.*). This policy also contains an exclusion excluding coverage for any person "using a vehicle without a reasonable belief that that person is entitled to do so." (*Id.*, p. 15). Empire contends Innovative & Breeden are covered persons under the Allstate policy because Breeden was driving a covered auto, *i.e.*, the Mitsubishi Eclipse owned by Espinoza.

 **b.**   **The Mitsubishi Eclipse**

 Espinoza financed the Mitsubishi Eclipse through Mitsubishi Credit and subsequently defaulted on the note. Upon default, Mitsubishi Credit contracted with Innovative to repossess the vehicle. (Def. App. at Ex. B). On September 13, 2002, Lewis Breeden and Josh Saunders were dispatched to repossess Espinoza's vehicle. (Def. App.[3] at Ex. A, p. 9). Breeden and Saunders arrived at the address where they were sent to pick up the vehicle sometime in the early evening hours. (Def. App. at Ex. A, p. 9, 21). A man whom they believed was the father of the owner of the vehicle came out of the residence and Breeden showed him their paperwork to repossess the vehicle. (Def. App. at Ex. A, p. 11). The man then called his son to bring the vehicle home. (*Id.*). After being informed that the keys to the car were in the glove box, Saunders drove the vehicle away from the residence, but subsequently stopped at a convenience store a few blocks away and loaded the Mitsubishi Eclipse on the tow truck. (Def. App. at Ex. A, pp. 34-35; Pltff's App. at Ex. D, p. 99).

 While Breeden and Saunders were towing the vehicle, the tow truck broke down due to a

---

[3] The pages to Allstate's appendix are not sequentially numbered, but instead tabbed as exhibits A through G. Exhibit A contains excerpted pages from the deposition of Lewis Breeden. For clarity, the Court will refer to the deposition testimony by citing to the letter of the exhibit followed by the page number of the deposition.

busted belt. (Def. App. at Ex. A, pp. 15, 22, 76-77). Breeden and Saunders radioed the main office to advise them of the problem, and they were instructed to take the Mitsubishi off the tow truck and drive it to go buy a replacement belt. (*Id.*). Breeden and Saunders needed petty cash to purchase a new belt so they first drove the Mitsubishi to a company office in New Braunfels, Texas. (Def. App. at Ex. A, p. 22). After obtaining the necessary cash, Breeden and Saunders went to a Rip Griffin parts store in New Braunfels, Texas. (Def. App. at Ex. A, p. 23, 80). When they could not find the replacement part at Rip Griffin, Breeden and Saunders again radioed the main office and inquired whether they should drive to San Antonio to look for the belt at parts stores there. (Def. App. at Ex. A, p. 23). A company representative instructed that they should go to San Antonio. (*Id.*). Ultimately, Breeden and Saunders were unable to locate the part in San Antonio and decided to head back to the location of the tow truck. (*Id.*). As they were traveling southbound on Loop 1604 in the Mitsubishi Eclipse, a white mustang pulled alongside and began to speed up and then slow down in front of Breeden. (Def. App. at Ex. A, p. 33-39, 78). Breeden accelerated rapidly to go around the mustang, and when he was moving from the fast lane to the slower lane, Breeden lost control of the vehicle and went into a skid at approximately 80 miles an hour. (Def. App. at Ex. A, pp. 39, 90-91). While in a skid, Breeden hit a Ford Explorer that went out of control, and flipped over before landing on the median. (*Id.*). Bruce and Debra Babcock were in the Ford Explorer and suffered serious injuries.

### c. The underlying lawsuit

On April 1, 2003, Bruce and Debra Babcock filed suit in the 57th Judicial District Court of Bexar County, Texas against Innovative, Luis Breeden,[4] and Vance Services Corp. alleging claims

---

[4] *See* n.1, *supra*.

of negligence, respondeat superior, and gross negligence. (Pltff. App. at Ex. B). The facts as alleged in the Babcocks' petition state:

> On or about September 14, 2002, Plaintiffs were southbound on N. FM 1604. Defendant Luis Breeden was street racing against another vehicle southbound on N. FM 1604, when he suddenly and unexpectedly smashed into the rear of the Plaintiffs' vehicle, causing it to flip end over end and causing Plaintiffs to incur serious bodily injuries, which are set out below.

(Pltff's App. at Ex. B, p. 3). Empire provided Breeden and Innovative with a defense subject to a reservation of rights, and ultimately settled the Babcocks' claims for $1,000,001. (Pltff's MSJ at 2-3). It is undisputed that neither Breeden or Innovative gave notice of a claim under the Allstate policy. Instead, Empire argues that it properly tendered the claim to Allstate and requested that Allstate defend Breeden and Innovative against the Babcocks' claims. (Def. App. at Ex. E, F). Allstate did not undertake the defense of Innovative or Breeden or otherwise participate in the underlying litigation. (Def. App. at Ex. G).

Empire filed suit in this Court seeking to recover from Allstate the amounts paid to settle the underlying claims, defense costs, and attorney's fees. *See* Doc. No. 1 (3:06-CV-1415-O) (N.D. Tex. Aug. 8, 2006). Empire now moves for summary judgment on the grounds that Allstate had a duty to defend and indemnify Breeden and Innovative because it cannot rely on the exclusionary provision to deny coverage as a matter of law, and that there are no genuine issues of material fact that Breeden and Innovative had a reasonable belief they were entitled to use the vehicle. (Pltff's MSJ at 5-6). Allstate has filed a cross-motion for summary judgment on Empire's claim for declaratory relief on the grounds it had no duty to defend Breeden or Innovative in the underlying

state court action.[5]  Additionally, Allstate moves for summary judgment on the grounds that Breeden and Innovative failed to comply with the notice provision in its policy, and that the amounts potentially recoverable by Empire are limited as a matter of law.

## II. LEGAL STANDARDS

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*  The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists.

---

[5]  The Court notes there is some ambiguity regarding the grounds asserted in Allstate's cross motion for summary judgment.  Allstate styled its pleading "Allstate County Mutual Insurance Company's Response in Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment on Plaintiff's Claim for Declaratory Relief and Brief in Support."  Thus, Allstate combined its response to Empire's motion for summary judgment with its cross-motion for summary judgment.  The first part of Allstate's pleading contains various headings and arguments regarding the lack of duty to defend Breeden and Innovative.  (Resp. & Cross MSJ at 3-19).  On page nineteen, Allstate's pleading contains a heading titled "Cross-Motion for Summary Judgment on Empire's Claims for Declaratory Relief."  This section addresses only the argument regarding the lack of notice.  While this heading seems to indicate that Allstate only seeks summary judgment on the lack of notice, the introductory paragraph on first page of Allstate's pleading contradicts such a construction.  Allstate's introductory paragraph specifically states that it moves for summary judgment on Empire's claims for declaratory relief and advances specific arguments arguing summary judgment in its favor is proper because it had no duty to defend or indemnify Breeden and Innovative in the state court action.  Based on the substance of the arguments made by Allstate, the Court construes its pleading as a cross motion for summary judgment on all of Empire's claims for declaratory relief. *See Hussain v. Boston Old Colony Ins. Co.*, 311 F.3d 623, 633 n. 39 (5th Cir. 2002) (noting that courts should construe a pleading liberally according to its substance rather than its form or titles).

FED. R. CIV. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "[T]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim." *Id.* (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

### III. ANALYSIS

The Court now turns to review of the parties' cross motions for summary judgment on Allstate's duty to defend and indemnify. Importantly, in a subrogation case such as this, Texas law recognizes the right of one insurer to seek payment from a second insurer under the doctrine of equitable subrogation. *Gen'l Star Indem. Co. v. Vesta Fire Ins. Co.*, 173 F.3d 946, 949 (5th Cir.

1999) (citation omitted) (defining equitable subrogation as "the legal fiction through which a person or entity, the subrogee, is substituted, or subrogated, to the rights and remedies of another by virtue of having fulfilled an obligation for which the other was responsible").

The duties to defend and indemnify are separate and distinct. *See Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 324 (5th Cir. 2001). An insurer's duty to defend is much broader than the duty to indemnify. *Id.* If the Court finds that the insurer has no duty to defend, then there is no duty to indemnify. *See id.* (citing *Lay v. Aetna Ins. Co.*, 599 S.W.2d 684, 687 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.) ("[A]ppellee had no duty to defend appellant, and, in turn appellant has no right to indemnification.")). The Court will therefore first address whether Allstate had a duty to defend Breeden and Innovative in the underlying lawsuit.

### A. Duty to Defend

Empire argues that Breeden and Innovative were entitled to coverage under the Allstate policy because they were operating the Mitsubishi Eclipse with a reasonable belief they were entitled to do so. (Pltff's MSJ at 5-6). Allstate argues that it had no duty to defend Breeden or Innovative because there are no allegations in the underlying complaint that trigger coverage, and even if they were using a covered auto, the exclusion in the policy precludes coverage. (Def's Cross MSJ at 3-5).

Generally, an insurance policy is interpreted based on the same rules of construction applicable to contracts. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987). Under Texas law, a district court determines an insurer's duty to defend by following the eight-corners rule. *Liberty Mutual Ins. Co. v. Graham*, 473 F.3d 596, 599 (5th Cir. 2006). Based on this rule, the Court looks at only the allegations in the underlying petition and the language of the insurance policy to

determine whether a duty to defend exists. *Id.* Texas courts have applied the eight-corners rule strictly and, except for limited exceptions, do not allow consideration of extrinsic evidence to determine the duty to defend. *See Liberty Mutual Ins. Co.*, 473 F.3d at 601 (holding that the court can look at extrinsic evidence when it goes solely to a fundamental issue of coverage and does not engage the truth or falsity of any facts alleged in the underlying petition); *see also GuideOne Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006); *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004).

If the petition filed against the insured, liberally construed, alleges facts within the scope of coverage, the insurer has a duty defend. *Liberty Mutual Ins. Co.*, 473 F.3d at 602 n. 19. Doubts are resolved in favor of the insured. *Id.* Further, a district court must "review the allegations made in the court petitions . . . in light of the exclusions in the insurance contracts." *Old Republic Ins. Co. v. Comprehensive Health Care Assoc., Inc.*, 2 F.3d 105, 107 (5th Cir. 1993). "If the petition only alleges facts excluded by the policy, the insurer is not required to defend." *Fidelity & Guaranty Ins. Underwriters Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982) (citations omitted).

Under the eight-corners rule, the initial burden lies with the insured to demonstrate that the claims alleged in the underlying lawsuit potentially fall within the insurance policy's scope of coverage. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc*., 939 S.W.2d 139, 141 (Tex. 1997); *Northfield Ins. Co.*, 363 F.3d at 528. If the insured carries its burden, the insurer may argue the applicability of an exclusion to coverage under the policy. *See E. & R. Rubalcava Constr., Inc. v. Burlington Ins. Co.*, 148 F.Supp.2d 746, 749 (N.D. Tex. 2001) (Lynn, J.). In this case, then, the Court will first examine if Empire can meet its burden to show that the claims alleged against Breeden and Innovative in the underlying suit filed by the Babcocks are covered under the Allstate

policy.

      The Allstate policy provides liability coverage for "damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident." (Pltff's Ex. A, p. 14). Further, a "covered person" is defined in part as "any person using your covered auto." (*See id.*). In their original petition, the Babcocks allege that Breeden was street racing with another vehicle when he unexpectedly crashed into the Babcocks vehicle causing them to suffer severe injuries. (Pltff's App. at Ex. B, p. 3). The Babcocks' petition also contains detailed allegations regarding Breeden's awareness that his actions posed an extreme risk of harm to the safety and welfare of others. (Pltff's App. at Ex. B, pp. 6-7). Further, the Babcock's pleaded that Innovative was liable for Breeden's actions because he was acting in the course and scope of his employment at the time of the accident. (*Id.*). There are no allegations in the Babcocks' petition that Breeden or Innovative were using a covered auto under the Allstate policy. There is not even a single allegation that shows the Mitsubishi Eclipse was involved in the accident.

      Given their most liberal interpretation, the allegations in the Babcocks' petition simply suggest that their injuries resulted from Breeden's use of a vehicle. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997) (holding that a causal relation between the injury and the use of a vehicle is essential to coverage). Nonetheless, Allstate does not dispute that Breeden was using the Mitsubishi Eclipse at the time of the accident, and that the Mitsubishi Eclipse is a covered auto. (Def. App. at Ex. G). The Court will therefore address whether Breeden's use of the Mitsubishi Eclipse is within the scope of the exclusion in the Allstate policy.

      The Allstate policy also contains an exclusion provision that applies when any person uses

"a vehicle without a reasonable belief that that person is entitled to do so." (Pltff's Ex. A, p. 15). As previously discussed, the underlying petition contains no facts tending to show that Breeden or Innovative were covered persons under the Allstate policy or that they were using a covered auto. At best the facts alleged in the Babcocks' petition speak to the issue of whether Breeden was using the vehicle with a reasonable belief he was entitled to do so.

Empire moves for summary judgment on the ground that the exclusion does not apply because the underlying petition is silent as to whether Breeden was using the vehicle with a reasonable belief he was entitled to do so. (Pltff's MSJ at 7). Allstate counters that the underlying petition contains various allegations regarding Breeden's state of mind establishing that he was using the vehicle without a reasonable belief. (Resp. & Cross-MSJ at 4-5).

In support of its arguments, Empire principally relies on a Dallas Court of Appeals case holding that an exclusion, identical to the one at issue in this case, did not apply because the underlying petition contained no allegations which would indicate that the putative insured did not have a reasonable belief she was entitled to use the vehicle at the time of the accident. *See United States Fire Ins. Co. v. United Serv. Automobile Ass'n*, 772 S.W.2d 218, 224 (Tex. App.—Dallas 1989). Notably, in *United States Fire Insurance Company*, the court of appeals applied a strict eight corners analysis and looked solely at the allegations in the underlying petition to determine if the "reasonable belief" exclusion applied. *Id.* at 223. The facts in that case showed that the insurer relied on allegations, which simply stated the putative insured acted "suddenly and without warning" to use the vehicle. *Id.* In examining these facts, the court of appeals held that these facts did not address the putative insured's belief, and there was nothing in the entire counterclaim that suggested the putative insured did not have a reasonable belief she was entitled to use the vehicle. *Id.*

In contrast, Allstate relies on facts in the Babcocks' petition alleging Breeden was street racing the vehicle at the time of the accident, and further paragraphs 26 and 27, which allege facts regarding Breeden's awareness that his actions posed an extreme risk of harm to the safety and welfare of others:

> 26.     Defendant LUIS BREEDEN'S acts or omission described above, when viewed from the standpoint of Defendant at the time of the act or omission, involved an extreme degree of risk, considering the probability of harm to Plaintiffs and others.
>
> 27.     Defendant LUIS BREEDEN had actual, subjective awareness of the risk involved in the above described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs and others.

(Resp. & Cross-MSJ at 5, 10-11, Pltff's Ex. B, pp. 6-7).   Allstate argues these facts establish as a matter of law that the exclusion in the policy applies because Breeden could not have objectively believed he was entitled to use the vehicle in conscious disregard to the rights, safety, and welfare of others.   (Resp. & Cross-MSJ at 5-8, 10-11).   The Court agrees.   Thus, contrary to Empire's arguments, the Court finds the Babcocks' petition is not silent on the issue of whether Breeden had a "reasonable belief" he was entitled to use the vehicle.   (*See* Pltff's MSJ at 6-7).

Allstate further argues that the Court should apply an objective test when reviewing whether the "reasonable belief" exclusion applies.   Applying this objective test, Allstate contends the factual allegations in the Babcocks' petition negate that Breeden may have had any "reasonable belief" as a matter of law.   (Resp. & Cross-MSJ at 5).   Empire disputes that the inquiry regarding whether Breeden had a reasonable belief to use the vehicle involves an objective inquiry.   (*Id.*).

To resolve this issue, the Court again looks to the Texas Court of Appeals opinion in *United States Fire Insurance Company*.   772 S.W.2d at 224.   While the court of appeals did not explicitly

describe the test it employed, its analysis clearly followed an objective review of the allegations in the underlying petition to determine "whether Anna [the putative insured] had a 'reasonable belief' that she was entitled to grab the steering wheel when she did." *Id.* The parties have not cited any other Texas decision which sets forth the standard applicable to the "reasonable belief" clause, and the Court's independent research yields the conclusion that no other Texas court has addressed the issue.

As a federal court sitting in diversity, the court is bound to follow state substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). When the state's highest court has not addressed the issue in question, a federal court is allowed to make an *Erie* guess as to what the Texas Supreme Court would most likely decide. *Herrmann Holdings, Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 558 (5th Cir. 2002). "While decisions of intermediate state appellate courts provide guidance, they are not controlling." *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 565-66 (5th Cir. 2005) (citations omitted). In this case, the Court finds that the Texas court of appeals analysis in *United State Fire Insurance Company* is instructive. The Court therefore finds that the Texas Supreme Court would likewise employ an objective test to determine whether an insured had a "reasonable belief" they were entitled to use a vehicle. Indeed, the majority of jurisdictions that have reviewed this identical exclusion in an insurance policy have held that the analysis includes both a subjective and objective inquiry. *See Hugenberg v. West Am. Ins. Co./Ohio Cas. Group*, 2006 WL 891074, at *10 (Ky. Ct. App. Apr. 7, 2006); *Progressive Northern Ins. Co. v. Concord Gen. Mut. Ins. Co.*, 864 A.2d 368, 372 (N.H. 2005); *Metro. Prop. & Cas. Ins. Co. v. Espach*, 313 F.Supp.2d 109, 114 (D. Conn. 2004); *Craig v. Barnes*, 710 A.2d 258, 260 (Me. 1998); *Hurst v. Grange Mut. Cas. Co.*, 470 S.E.2d 659, 713 (Ga. 1996); *Blount v. Kennard*, 612 N.E.2d

1268, 1270 (Ohio Ct. App. 1992); *Gen. Accident Fire & Life Assurance Corp. v. Perry*, 541 A.2d 1340, 1349 (Md. Ct. Spec. App. 1988); *Allstate Ins. Co. v. U.S. Fid. & Guar. Co.*, 663 F.Supp. 548, 553 (W.D. Ark. 1987).

Empire argues that Breeden's objective belief is established by the fact that Espinoza gave Breeden the keys to the car and told him to take it, as well as the fact that his supervisors instructed him to drive the car to go buy a replacement part for the tow truck. (Pltff's Reply at 5-6). Empire provides excerpts from the deposition testimony of Breeden as summary judgment evidence in support of the reasonable belief issue. (Pltff's App. at Ex. D). In totality, Empire's arguments address the issue of whether Breeden had actual or apparent permission to use the vehicle. (Pltff's MSJ at 8-17; Pltff's Reply at 1-12). Because in *United States Fire Insurance Company*, the court of appeals expressly held that the test is *not* whether there is express or implied permission, 772 S.W. 2d at 224, Empire's arguments are misdirected. Even if Breeden had a subjective belief that he had permission to drive the Mitsubishi Eclipse at the time of the accident, the allegations in the Babcocks' petition show that such belief was not objectively reasonable.

The factual allegations in the Babcocks' petition show that Breeden was street racing at the time of the accident; that such actions were done with an awareness of an extreme degree of risk; but he proceeded with conscious indifference to the rights, safety, and welfare of Plaintiffs. Objectively, these facts negate any inference that Breeden may have had a reasonable belief to use the vehicle in the manner it was being operated at the time of the accident. The Court finds that the allegations in the Babcocks' petition trigger the exclusion in the Allstate policy. As such, Allstate did not have any duty to defend Breeden or Innovative in the underlying lawsuit.

## B.    Duty to Indemnify

Empire's motion for summary judgment also asks the Court to find Allstate has a duty to indemnify it for the amounts expended in settling the underlying lawsuit.  (Pltff's MSJ at 3).  As previously discussed, an insurer's duty to indemnify is distinct and separate from its duty to defend. *See Quorum Health Resources, LLC v. Maverisk*, 308 F.3d 451, 468 (5th Cir. 2002) (citing *Farmers Tex. County Mut. Ins. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997)).  While the analysis of the duty to defend is based on the pleadings and the policy language, the duty to indemnify arises from the "actual facts that are developed to establish liability in the underlying suit."  *Id.*

In general, "Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded." *Northfield*, 363 F.3d at 529. As the Fifth Circuit has stated, because "the duty to defend is broader than the duty to indemnify" under Texas law, "[l]ogic and common sense dictate that if there is no duty to defend, then there must be no duty to indemnify." *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368-69 (5th Cir. 1998); *see also Western Heritage Ins. Co. v. River Entm't*, 998 F.2d 311, 315 (5th Cir. 1993) ("If an insurer has no duty to defend a specific lawsuit, it likewise bears no duty to indemnify insure against the resulting liability.").  There is no duty to defend in this case because the provision in the Allstate policy that excludes coverage when a person uses a covered auto without a reasonable belief he was entitled to do so applies.  Accordingly, the Court DENIES Empire's Motion for Summary Judgment, finding that Allstate has no duty to indemnify Empire.  Based on the finding that Allstate has no duty to indemnify Empire, the Court GRANTS Allstate's cross-motion for summary judgment on this ground.

## C.    Allstate's alternate grounds for summary judgment

Allstate has also moved for summary judgment on the grounds that (1) Empire cannot

recover defense costs because Breeden and Innovative failed to give notice of underlying suit as required under the Allstate policy, and (2) that if the Court were to find a duty to indemnify, the amounts recoverable are limited as a matter of law. (*See* Resp. & Cross-MSJ at 19; Allstate's Partial MSJ at 1-2). In light of the Court's finding that Allstate had no duty to defend or indemnify and is entitled to summary judgment on these grounds, it is not necessary to address Allstate's alternate grounds. *See Staton Holdings Inc. v. MCI WorldCom Commc'ns Inc.*, No. Civ.A. 399CV2876D, 2001 WL 1041796, at *2, n. 2 (N.D. Tex. Sept. 4, 2001) (Fitzwater, J.).

## IV. CONCLUSION

Based on the foregoing, it is ORDERED that Empire Indemnity Insurance Company's Motion for Summary Judgment (Doc. # 17) is hereby DENIED. It is FURTHER ORDERED that Allstate County Mutual Insurance Company's Cross-Motion for Summary Judgment on Plaintiff's Claim for Declaratory Relief (Doc. # 18) is GRANTED. Finally, it is ORDERED that Allstate's Partial Motion for Summary Judgment on the Amount Potentially Recoverable by Plaintiff (Doc. # 29) is DENIED as moot. Accordingly, this case is DISMISSED with prejudice.

**SO ORDERED** on this 8th day of May, 2008.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**